UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-60479-Civ-ALTONAGA
MAGISTRATE JUDGE P.A. WHITE

ISMAEL CESAR,                          :

    Petitioner,                    :
v.                                                   <u>REPORT OF</u>
                               :       <u>MAGISTRATE JUDGE</u>
WALTER M. McNEIL,
                               :

    Respondent.                    :
_____:

## I. <u>Introduction</u>

Ismael Cesar, a state prisoner confined at Desoto Correctional Institution-Annex at Arcadia, Florida, has filed a <u>pro se</u> petition for writ of habeas corpus pursuant to 28 U.S.C. §2254, attacking his conviction entered in Case No. 04-11459 in the Circuit Court of the Fifteenth Judicial Circuit of Florida at Broward County.

This Cause has been referred to the undersigned for consideration and report pursuant to 28 U.S.C. §636(b)(1)(B) and Rules 8 and 10 of the Rules Governing Section 2254 Cases in the United States District Courts.

For its consideration of the petition (DE# 1), the Court has the respondent's response to an order to show cause with multiple exhibits (DE# 11, 12), and the petitioner's reply (DE# 15). The Court also has Petitioner's pleading, seeking an evidentiary hearing based upon newly discovered evidence (DE# 16); the respondent's response to the pleading (DE# 18); and the petitioner's reply (DE# 19).

## II. Claims

Cesar challenges his convictions on three grounds of ineffective assistance of trial counsel and one ground of trial court error. Specifically, he claims that:

1. He received ineffective assistance of trial counsel, because his lawyer failed to request an alibi jury instruction.

2. He received ineffective assistance of trial counsel, because his lawyer failed to request DNA testing on the camouflage sneaker retrieved from the scene of the attack.

3. He received ineffective assistance of trial counsel, because his lawyer failed to move for a mistrial due to a sleeping juror.

4. The trial court improperly failed to *sua sponte* instruct the jury as to an alibi defense.

## III. Procedural History

Cesar was charged by Information with the offenses of attempted first-degree murder (Count I) and armed burglary of a dwelling (Count II). (DE# 12; Ex. 1). The case proceeded to trial before a jury with trial counsel filing before trial a Notice of Alibi and photographs of Cesar at the home of Dorian and Gail Howard on the date of the criminal incident. (DE# 12; Ex. 6, 7). After jury trial, Cesar was found guilty as charged in the Information. (DE# 12; Ex. 12). The jury further expressly found as to Count I that during the commission of the crime, Cesar carried, displayed, used, threatened to use or attempted to use a weapon. Id. Cesar was adjudicated guilty of the subject offenses and sentenced as an habitual violent offender to concurrent terms of life imprisonment. (DE# 12; Ex. 13, 15). Cesar prosecuted a direct appeal from his convictions, raising the same claims presented in this federal proceeding as grounds one and four. (DE# 12; Ex. 17). The Florida Fourth District Court of Appeal affirmed Cesar's

2

convictions without prejudice to raise the ineffective assistance of trial counsel claim in a postconviction motion pursuant to Fla.R.Crim.P. 3.850. (DE# 12; Ex. 19). See also Cesar v. State, 943 So. 2d 217 (Fla. 4 DCA 2006).

Approximately eight months after the conclusion of the direct appeal proceeding, Cesar returned to the trial court, filing a pro se Rule 3.850 motion with supporting memorandum of law and Appendix, raising grounds one, two and three of the instant petition as well as six unrelated claims of ineffective assistance of trial counsel. (DE# 12; Ex. 23, 24, 25). The state filed a thorough response with supporting exhibits, addressing the claims on the merits. (DE# 12; Ex. 26).  The state argued that Cesar was not entitled to postconviction relief in that his claims were without merit, because Cesar had failed to demonstrate that he received ineffective assistance of trial counsel based upon the well-established standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). Id. The trial court entered a written order summarily denying Cesar's Rule 3.850 motion for the reasons given in the state's response which was attached to the order and incorporated therein. (DE# 12; Ex. 27). Cesar took an appeal from the denial of postconviction relief. (DE# 12; Ex. 28, 29, 30). In his initial brief, subsequently amended, Cesar only specifically referred to the trial court's denial of three enumerated grounds for relief. (DE# 12; Ex. 29, 30). One of the three grounds was claim one of the instant petition. Id. The denial of postconviction relief was per curiam affirmed by the appellate court in a decision without written opinion. (DE# 12; Ex. 31). See also Cesar v. State, 995 so. 2d 976 (Fla. 4 DCA 2008)(table). Cesar's motion for rehearing was denied. (DE# 12; Ex. 32, 33). Not long after the appellate court issued its mandate, Cesar came to this court, filing the instant pro se petition for writ of habeas corpus

3

pursuant to 28 U.S.C. §2254.

IV. <u>Threshold Issues-Timeliness, Exhaustion and Procedural Bar</u>

The respondent rightfully does not challenge the timeliness of this petition. <u>See</u> 28 U.S.C. §2244(d). He further properly concedes that claims one and four of this federal petition have been properly exhausted before the state courts; <u>see</u> 28 U.S.C. §2254(b)(1) and (b)(1)(A)(A state prisoner's habeas corpus petition "shall not be granted unless it appears that----the applicant has exhausted the remedies available in the courts of the State...."),[1] and are not subject to any procedural bars. <u>See</u> <u>Cone v. Bell</u>, ___ U.S. ____, ____, 129 S.Ct. 1769, 1780 (2009)(holding that when petitioner fails to first raise his federal claims in state court in compliance with relevant state procedural rules, federal habeas review is procedurally barred). <u>See also</u> <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999).[2] The respondent argues, however, that grounds two and three of this petition have not been exhausted and

---

[1]An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. §2254(b),(c). A claim must be presented to the highest court of the state to satisfy the exhaustion of state court remedies requirement. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Richardson v. Procunier</u>, 762 F.2d 429, 430 (5 Cir. 1985); <u>Carter v. Estelle</u>, 677 F.2d 427, 443 (5 Cir. 1982), <u>cert.</u> <u>denied</u>, 460 U.S. 1056 (1983). A petitioner is required to present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270-275-77 (1971). Exhaustion is ordinarily accomplished on direct appeal. If not, in Florida, it may be accomplished by the filing of a Rule 3.850 motion, and an appeal from its denial. <u>Leonard v. Wainwright</u>, 601 F.2d 807, 808 (5 Cir. 1979). In Florida, claims of ineffective assistance of counsel are generally not reviewable on direct appeal, but are properly raised in a motion for postconviction relief. <u>See</u> <u>Kelley v. State</u>, 486 So.2d 578, 585 (Fla.), <em>cert. denied</em>, 479 U.S. 871, 107 S.Ct. 244, 93 L.Ed.2d 169 (1986).

[2]A procedural-default bar in federal court can arise in two ways: (1) when a petitioner raises a claim in state court and the state court correctly applies a procedural default principle of state law; or (2) when the petitioner never raised the claim in state court, and it is obvious that the unexhausted claim would now be procedurally barred in state court. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302-03 (11 Cir. 1999). In the second instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. <u>Id</u>. at 1303.

are prospectively procedurally barred from federal habeas corpus review. Specifically, the respondent maintains that after all postconviction proceedings had concluded in the trial court, Cesar did not seek review of the denial of grounds two and three before the state appellate court. The respondent has not addressed on the merits grounds two and three.

Under Florida law, in an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing, no appellate briefs are required. See Fla.R.App.P. 9.141(b)(2)(C). Therefore, "a petitioner who does file a brief in an appeal of the summary denial of a Rule 3.850 motion does not waive any issues not addressed in the brief." Darity v. Sec'y, Dep't of Corr., 244 Fed. Appx. 982, 984 (11 Cir. 2007), *citing*, Webb v. State, 757 So.2d 608, 609 (Fla. 5 DCA 2000)(holding that a claim in a Rule 3.850 motion had not been waived by the appellant's failure to argue it in his initial brief because the motion had been denied without an evidentiary hearing).[3] See also Cortes v. Gladish, 216 Fed.Appx. 897, 899 (11 Cir. 2007)(holding that since petitioner's postconviction appeal did not follow an evidentiary hearing and he was not required to file an appellate brief, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion).

The record reveals that the ineffective assistance of trial counsel claims presented here as grounds two and three were properly raised and rejected on the merits by the trial court during the postconviction proceedings, after a response had been

---

[3]It is noted that *Webb* has now been receded from in Ward v. State, 19 So.3d 1060 (Fla. 5 DCA October 2, 2009)(holding that issues not raised in brief from summary denial of Rule 3.850 are abandoned).

filed by the state. Petitioner then filed an appellate brief to address ground one and three other grounds, all of which had been summarily denied. Based upon applicable Florida law, the other summarily denied claims did not have to be specifically raised in the appellate brief to accomplish review by the appellate court and, thereby, satisfy the federal exhaustion requirement. Consequently, the respondent's procedural defenses are meritless and all grounds raised in this federal proceeding have been exhausted before the state courts and warrant discussion on the merits by this Court.[4]

## V. Standard of Review

Petitioner filed his petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L. No. 104-132, 110 Stat. 1214 (1996). Post-AEDPA law, therefore, governs this action. Abdul-Kabir v. Quarterman, 550 U.S. 233, 127 S.Ct. 1654, 1664, 167 L.Ed.2d 585 (2007); Penry v. Johnson, 532 U.S. 782, 792, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n .9 (11 Cir. 2007). It is important to recognize just how limited is this Court's review in a habeas proceeding. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub.L .No. 104-132, 110 Stat. 1214 (1996), provides that a federal court may not grant the writ unless the state court adjudication on the merits either:

---

[4]In his reply, the petitioner appears to now abandon grounds two and three, basing his withdrawal of the claims on the respondent's procedural bar argument. See Response to Government's Answer Brief at 1-2. (DE# 15). Because the respondent's procedural bar arguments are erroneous, review on the merits of grounds two and three is appropriate despite the apparent waiver of the claims by petitioner. The respondent has not addressed on the merits claims two and three of the instant petition. The respondent has, however, provided this Court with all pertinent state court documents, including the trial transcript and the trial and appellate court records pertaining to the Rule 3.850 proceeding. Therefore, in the interest of expediency, the Court will review on the merits claims two and three of this petition without further response from the respondent.

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

As the United States Supreme Court explained in <u>Williams v. Taylor</u>, 529 U.S. 362, 412-13 (2000):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

In deciding whether a state court ruling involved an "unreasonable application" of federal law, this Court does not focus merely upon whether the state court decision was erroneous or incorrect; rather, this Court may issue a writ of habeas corpus only if the state court's application of clearly-established federal law was objectively unreasonable. *See id*. at 409-11. <u>See also</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1418 (2009).

The statutory phrase "clearly established Federal law" "refers to the holdings, as opposed to the dicta, of [the U.S. Supreme] Court's decisions as of the time of the relevant state-court decision." <u>Williams v. Taylor</u>, 529 U.S. at 412, 120 S.Ct. at 1523 (majority opinion by O'Connor, J.). Even where a state court denies an application for post-conviction relief without written opinion, that decision constitutes an "adjudication on the merits," and is

thus entitled to the same deference as if the state court had entered written findings to support its decision. See Wright v. Sec. of Dep't of Corr., 278 F.3d 1245, 1255 (11 Cir. 2002). Further, findings of fact by the state court are presumed correct, and the petitioner bears the burden of rebutting that presumption of correctness by clear and convincing evidence. See 28 U.S.C. §2254(e)(1); Crowe v. Hall, 490 F.3d 840, 844 (11 Cir. 2007), cert. denied, ___ U.S. ___, 128 S.Ct. 2053 (2008).

## VI. Facts

In brief, the facts of this case as revealed by the evidence admitted at trial are as follow.[5] The victim, Walter Lotero, and Cesar lived in the same neighborhood about ten houses apart. The two had been good friends for approximately two years, but the friendship ended about one year before the subject incident when Cesar accused Lotero of stealing a ring from his home. At approximately 1:00 in the afternoon on the subject day, Lotero, his girlfriend Dianne Rios and the victim's mother Maria Lotero were at home when they heard the front door open. The intruder entered the home and told Walter that he had been looking for him. As Walter approached the intruder, the intruder raised his weapon, a two-foot long samurai sword, and brought it down on Walter's head. The sword sliced Walter's scalp, cutting to the bone. Walter backed away, but the perpetrator again swung at Walter's head. Walter put his hand up to block the blow and the sword cut through his flesh to the bone, causing nerve damage. The perpetrator, continuing to wield his sword, struck Walter another nine to twelve times. Walter ultimately collapsed onto the floor by his bed. The perpetrator turned around, slipped on the pool of blood and fell to

---

[5]For a more extensive review of the evidence, with citations to the trial transcript, see the briefs filed in the direct appeal proceeding. (Initial Brief of Appellant at 2-4; Answer Brief of Appellee at 1-8)(DE# 12; Ex. 17, 18).

the ground on one knee. One of the perpetrator's shoes, a size eleven with a camouflage pattern, came off. The perpetrator then walked out the door with the sword. Rios telephoned 911, and Walter was transported to the hospital. Walter survived his life-threatening injuries, although he sustained permanent injuries from the attack.  When the police arrived, Rios told the police that it had been Cesar who had attacked Walter and she showed them where he lived.

Cesar was observed by a neighbor walking rapidly away from the Lotero home at approximately 1:00 P.M. on the subject day and carrying something wrapped in his hand which looked like a white tee-shirt. The perpetrator had been wearing a white clothing at the time of the attack. The victim, Rios, Maria and the neighbor all identified Cesar as the assailant before trial and during the trial. Walter, Rios and Cesar's brother testified that they had seen a samurai sword at Cesar's house. After she had received a telephone call from the police shortly after the incident, Cesar's girlfriend went home and discovered that Cesar's sword had been removed from the closet where it was usually stored. Cesar's girlfriend also told the police that Cesar owned a pair of camouflage shoes and those too were missing when the police arrived at her house. Cesar presented an alibi defense at trial. Dorian Howard, Cesar's friend, and Dorian's mother, Gail Howard, who was like a mother to Cesar, both testified that Cesar had arrived at their home at approximately 9:30 A.M. on the subject day and remained there until approximately 5:00 P.M. While Dorian had left the house that day, Gail testified that she was home the entire day. Cesar's brother called the Howard home, looking for Cesar. Cesar was told by his brother that the police were looking for him. A search of Cesar's home after the incident produced no bloody clothes or sneaker and the clothes worn by Cesar when arrested

contained no blood. No blood was found in Cesar's car. Photographs taken by Gail on the day of the incident showed Cesar sleeping on the couch, and the photographs were admitted into evidence at trial.

## VII. <u>Discussion</u>

### A. <u>Ineffective Assistance of Trial Counsel</u>

Cesar raises three grounds of ineffective assistance of trial counsel. To prevail on a claim of ineffective assistance, a petitioner must demonstrate both that his attorney's efforts fell below constitutional standards, and that he suffered prejudice as a result. <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). A habeas court's review of a claim under the *Strickland* standard is "doubly deferential." <u>Knowles v. Mirzayance</u>, ___ U.S. ___, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009), *citing*, <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6, 124 S.Ct. 1, 157 L.Ed.2d 1 (2003)(per curiam). The relevant question "is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable-a substantially higher threshold." <u>Knowles</u>, 129 S.Ct. at 1420. (citations omitted). Finally, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." <u>Id</u>. For the reasons stated below, the trial court's denial of Cesar's Rule 3.850 motion, where the subject ineffective assistance of trial counsel claims now raised in this federal petition were presented, is not in conflict with clearly established federal law or based on an unreasonable determination of the facts, and its result should not be disturbed.[6] 28 U.S.C.

---

[6]It should be noted that the trial court judge presiding over the trial proceedings was the same judge who presided over the subject state postconviction proceedings. Where the judge presiding over the trial proceedings is the same judge presiding over the post conviction proceedings, the presumption of

§2254(d)(1); <u>Williams v. Taylor</u>, <u>supra</u>.

(1) <u>Claim One</u>

Cesar claims in ground one that his trial lawyer improperly failed to request an alibi jury instruction. Even if this Court were to find for purposes of this federal proceeding that trial counsel's failure to request an alibi jury instruction constituted deficient performance,[7] Cesar is not entitled to habeas corpus relief on this claim because he cannot satisfy the second prong of *Strickland*, prejudice.[8] The United States Supreme Court has held with regard to a theory of defense jury instruction that "as a general proposition, a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."[9] <u>Mathews v.</u>

---

correctness afforded the findings of fact of the state court is particularly strong. <u>See</u> <u>May v. Collins</u>, 955 F.2d 299, 314 (5 Cir.), <u>cert</u>. <u>denied</u>, 504 U.S. 901 (1992). As indicated, the trial court's decision in the Rule 3.850 proceeding was affirmed on appeal.

[7]The performance prong of an ineffective assistance claim need not be discussed when no prejudice has been established. <u>See</u> <u>Brown v. Head</u>, 272 F.3d 1308, 1313 (11 Cir. 2001), <u>cert</u>. <u>denied</u>, 537 U.S. 978 (2002).

[8]The prejudice component of the *Strickland* test for ineffective assistance of counsel requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 694 (1984). A reasonable probability is one sufficient to undermine confidence in the outcome. <u>Id</u>. at 693-94. It is not enough for the defendant to show that the error had some conceivable effect on the outcome of the proceeding. <u>Id</u>. <u>See also</u> <u>Knowles v. Mirzayance</u>, ___ U.S. ___, ___, 129 S.Ct. 1411, 1422, 173 L.Ed.2d 251 (2009) ("To establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.")(internal quotation marks and citation omitted).

[9]Generally, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. <u>Jones v. Kemp</u>, 794 F.2d 1536, 1540 (11 Cir.), <u>cert</u>. <u>denied</u>, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); <u>Bryan v. Wainwright</u>, 588 F.2d 1108 (5 Cir. 1979); <u>Pleas v. Wainwright</u>, 441 F.2d 56 (5

United States, 485 U.S. 58, 63 (1988). The Eleventh Circuit has held that such an instruction must be given when the requested instruction 1) is correct, 2) is not substantially covered by the court's charge to the jury, and 3) deals with some point in the trial so important that failure to give the requested instruction would seriously impair the defendant's ability to conduct his defense. United States v. Vicaria, 12 F.3d 195, 198 (11 Cir. 1994), citing, United States v. Camejo, 929 F.2d 610, 614 (11 Cir. 1991).

Here, while the jury was not specifically instructed on the theory of alibi,[10] because counsel never requested the specific instruction,[11] the court's charge when viewed as a whole correctly stated the issues and law and was adequate. See United States v. Russell, 717 F. 2d 518, 521 (11 Cir. 1983). Review of the record reveals that the sole defense presented by Cesar at trial was an alibi defense as indicated by trial counsel at the start of the case by way of opening statement. See e.g., Trial Transcript at 141-51. As indicated above, in support of this defense, Cesar called Dorian and Gail Howard who testified that Cesar had been sleeping at their home at the time of the commission of the subject

---

Cir. 1971). A jury charge is adequate if, viewed as a whole, it fairly and correctly states the issues and law. United States v. Russell, 717 F.2d 518, 521 (11 Cir. 1983). Where the error alleged is an incomplete or omitted instruction, a habeas corpus petitioner bears an especially heavy burden, because an incomplete or omitted instruction is less likely to be prejudicial than an overt misstatement of the law. Henderson v. Kibbe, 431 U.S. 145, 154 (1977); Jacobs v. Singletary, 952 F.2d 1282, 1290 (11 Cir. 1992).

[10]The standard jury instruction on alibi provides: "An issue in this case is whether defendant was present when the crime allegedly was committed. If you have a reasonable doubt that the defendant was present at the scene of the alleged crime, it is your duty to find the defendant not guilty." Fla.Std.Jury Instr. (Crim.) 3.04(a), currently Fla.Std.Jury Instr. (Crim.) 3.6(I).

[11]See Transcript at 450-61.

criminal incident.[12] Id. at 407-18, 432-39. During closing argument, trial counsel argued to the jury that Cesar was not the assailant and that the state had failed to prove beyond a reasonable doubt that he had committed the crimes charged. Id. 478-504.

The jury was properly and fully instructed as to the presumption of innocence and the burden of proof in a criminal case. Id. at 519-20. The jury was also expressly instructed that they should find Cesar not guilty of the crimes charged if the state had not proved the case beyond a reasonable doubt. Id. at 520. Additionally, the court instructed the jury regarding the reliability of the evidence, weighing the evidence and the credibility of witnesses. Id. at 520-21. The trial court clearly and correctly instructed the jury that it could believe or disbelieve all or any part of the evidence presented or the testimony of any witness. Id. at 521-22. Accordingly, the jury was instructed that they should find Cesar not guilty if they did not believe the testimony of the state's witnesses or, the converse, if they believed the testimony of the defense's alibi witnesses. It is generally presumed that jurors follow their instructions. See, e.g., Richardson v. Marsh, 481 U.S. 200, 211 (1987).

The evidence admitted at trial of Cesar's guilt was overwhelming and included eyewitness testimony.[13] In light of the

---

[12]It is noted that Dorian Howard was a three-time convicted felon. Id. at 439-40.

[13]As indicated herein, three eyewitnesses to Cesar's attack, including the victim who miraculously survived the attack, testified it was in fact Cesar who had entered the victim's home, wielding a sword. See Trial Transcript at 191-94, 239-47, 279-80, 283-85. The victim knew Cesar in that they had previously been friends. Id. The victim positively identified Cesar as his assailant before trial and during the trial. Id. at 198-200, 217-218. The victim's girlfriend, Dianne Rios, also knew Cesar and identified Cesar as the assailant. Id. at 239-47. Additionally, the victim's mother, Maria Lotero, identified Cesar as the assailant. Id. at 279-80, 283-85.

instructions actually given to the jury and the trial transcript, it is clear the jury was aware that it should find Cesar not guilty if there was any reasonable doubt he was present at the scene. See Trial Transcript at 508-29. In other words, the jury knew that if it were to find the defense witnesses credible and the alibi defense believable, Cesar should be acquitted of the offenses charged. Apparently, the jury rejected the defense presented and instead believed the strong testimony of the state witnesses, as was its prerogative.[14] Thus, Cesar cannot demonstrate failure to provide the alibi instruction resulted in the guilty verdict. Consequently, he has failed to demonstrate that he received constitutionally ineffective assistance of trial counsel with regard to the jury instructions given in this case. See Strickland, supra.

(2) Claim Two

Cesar alleges in ground two that he received ineffective assistance of trial counsel, because his lawyer failed to request DNA testing of the camouflage sneaker retrieved from the scene of the attack. As was true of ground one, even if counsel's performance could in someway be deemed deficient for failing to have the item examined by an expert for DNA analysis, Petitioner suffered no prejudice as a result of counsel's inaction in that there is no reasonable probability that had he done so the outcome of the trial would have been different. See Strickland, supra.

Here, evidence admitted at trial revealed that the victim had bled profusely from the wounds inflicted by the perpetrator who had

---

[14]It is the responsibility of the jury to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. See Wilcox v. Ford, 813 F.2d 1140, 1143 (11 Cir. 1987), citing, Jackson v. Virginia, 443 U.S. 307, 326 (1979).

been wielding the sword. <u>See</u> Trial Transcript at 204-06, 249-52, 344-50. The eyewitnesses to the subject crimes testified that the perpetrator had lost a shoe when he slipped in a pool of the victim's blood. <u>Id</u>. at 204-06, 249-52. The shoe was recovered from the scene. <u>Id</u>. at 347. The evidence further revealed that the victim had been unarmed during the attack and that he had not inflicted any wound upon another during the incident. <u>Id</u>. at 214, 249. Additionally, as indicated above, Cesar had unequivocally been identified as the perpetrator. <u>Id</u>. at 198, 247.

Cesar's apparent assertion that if such DNA testing had been performed, he would have been exonerated of the subject offenses in that DNA testing would have proved that someone else had been the perpetrator is wholly conclusory with not support whatever in the record.[15] There is no competent evidence of record that testing and testimony by a defense expert would have provided any exculpatory testimony. The lack of a specific, affirmative showing of any exculpatory evidence leaves Petitioner's claim purely speculative and well short of the prejudice required by *Strickland*. Speculation about what witnesses could have said is not enough to establish prejudice. <u>See generally</u> <u>Grisby v. Blodgett</u>, 130 F.3d 365, 373 (9 Cir. 1997). <u>See also</u> <u>White v. Singletary</u>, 972 F.2d 1218, 1220 (11 Cir. 1992)("Courts should at the start presume effectiveness and should always avoid second-guessing with the benefit of hindsight.").

Moreover, in support of the alibi defense and attempt to

---

[15]Absent supporting evidence in the record, a court cannot consider a habeas petitioner's mere assertions on a critical issue in his <u>pro se</u> petition to be of probative value. <u>See</u> <u>Tejada v. Dugger</u>, 941 F.2d 1551, 1559 (11 Cir. 1991)(recognizing that a petitioner is not entitled to habeas relief "when his claims are merely 'conclusory allegations unsupported by specifics' or 'contentions that in the face of the record are wholly incredible'" (citation omitted)). <u>See also</u> <u>Ross v. Estelle</u>, 694 F.2d 1008, 1011-12 (5 Cir. 1983).

persuade the jury that the state had not proved its case beyond a reasonable doubt, trial counsel did in fact point out to the jury during closing argument that no DNA testing had been performed on the shoe. Id. at 480-81. The jury was not persuaded by the defense argument. Since Cesar cannot establish that he was prejudiced by the alleged deficient performance, he is not entitled to habeas corpus relief on ground two. See also Wellington v. Moore, 314 F.3d 1256, 1260-61 (11 Cir. 2002)(holding that where there is no reasonable probability that the alibi testimony would have changed the outcome of the trial, given the strength of the evidence admitted at trial, the trial court's application of *Strickland's* prejudice prong in postconviction proceeding was not objectively unreasonable).

### (3) Claim Three

Cesar claims in ground three that he received ineffective assistance of trial counsel, because his lawyer failed to move for a mistrial due to a sleeping juror. During the Rule 3.850 proceeding, where the identical issue was raised, the state first reviewed the applicable *Strickland* standard and then asserted that the claim was meritless, stating as follows in its response:

> The record reflects that, during the cross-examination of the victim's mother, Maria Lotero, [the trial] Court noted that it was then 4 o'clock in the afternoon, and took a brief recess. The Court then noted for the record that one of the jurors, Ms. Schneider, had been "nodding off a little bit," and stated that, instead of "letting it go," the Court had called the break so that the jurors could refresh themselves; after the recess, defense counsel then continued to examine the witness on the same subject matter which she has before the break, *i.e.*, the witness's ability to identify the defendant and any inconsistent statement that she may have had made. (See attachment A; Transcript at R297-305).
>
> The State would contend the neither deficient performance of counsel nor prejudice has been demonstrated. This Court observed that, late in the afternoon, one of the jurors was "nodding off a little bit," and resolved the situation by

calling a brief recess. The record reflects that this solution would seem to have "worked," in that nothing more was placed on the record concerning this juror. Defense counsel's cross-examination of this witness was not lengthy, and the portion which took place after the break would seem to have covered all salient matters in regard to the witness's testimony; it should also be noted that this witness's testimony was essentially cumulative, at best, to the testimony of the victim himself, as well as that of Dianne Rios, the other eyewitness, and was even less comprehensive in some respects, in that Maria Lotero did not witness the majority of the attack. (See Attachment A; Transcript at R R198-207; 246-252; 278-84). Accordingly, no viable claim of ineffective assistance of counsel has been set forth, and this claim for relief should be summarily **DENIED** in all respects.

(State's Response to Defendant's Motion for Post Conviction Relief at 4-5)(emphasis supplied)(DE# 11; Ex. 26). The trial court denied relief on the subject claim, "for the reasons given in the State's Response ...."[16] (Order Denying Defendant's Motion for Post Conviction Relief)(DE# 11; Ex. 27). The trial court's ruling was affirmed without written opinion. See Cesar v. State, 995 so. 2d 976 (Fla. 4 DCA 2008)(table).

Based upon the record here, the allegations of prejudice are insufficient to meet the *Strickland* test as properly determined by the state courts. Specifically, as found by the state courts, the issue of the sleeping juror was appropriately dealt with by the trial court. When the court noticed the sleeping juror, the court immediately called for a brief recess of the trial proceeding, the jury was provided with a break, and the subject juror apparently did not again fall asleep during the defense's cross-examination or the remainder of the trial.[17] See Trial Transcript at 300-05, 301-

---

[16]As noted *infra* at n.5, the trial court judge presiding over the trial proceedings was the same judge who presided over the subject state postconviction proceedings.

[17]Specifically, the prosecutor requested a sidebar conference, apparently when he noticed what appeared to be a sleeping juror. See Trial Transcript at 300. The trial court seeing what the prosecutor saw, stated in open court:

05, 305-536. Moreover, after the recess, trial counsel essentially repeated the questions asked immediately before the recess. Id. at 297-99, 301-05. Accordingly, the juror had not missed any of trial counsel's cross-examination. Finally, even if the subject juror had missed a portion of the cross-examination, the jury had been presented with additional, and perhaps even stronger, evidence that Cesar had been the perpetrator of the burglary and brutal attack upon the victim and the full cross-examination of the state witnesses by trial counsel. See e.g.. Trial Transcript at 226-34, 264-67, 276-77. Cesar has not demonstrated that he received constitutionally ineffective assistance of trial counsel, as alleged in ground three. See Strickland, supra.

## B. Trial Court Error

Cesar claims in ground four that the trial court improperly failed to *sua sponte* instruct the jury on an alibi defense. The

---

> Ladies and gentlemen of the jury, it's now 4:00, and I understand, as the afternoon goes on and we work hard throughout the day, we may get somewhat tired or sleepy. So I need - - I'm going to do this: So with the same admission [sic] I always give you, why don't we take a break.
>
> Mr. Fairweather is going to take you back, have a drink of water. If you need to have some coffee made or something, tell Mr. Fairweather. We'll try to get that done. Okay?

Id. The following exchange then took place between the court and trial counsel Bailey:

> THE COURT:    Let the record reflect that the jury has left the courtroom.
>
> Ms. Bailey, I'm sorry. I noticed that the lady - - the juror with the long hair, the third juror in, what's her name, anybody?
>
> MS. BAILEY: From this side? I know who you're talking about.
>
> THE COURT:    She was nodding off a little bit. So instead of letting it go, I stopped it so that we can take a break and she can stretch her legs and maybe, you know, get back.

Id. The jury returned to the courtroom at 4:22 P.M. and cross-examination resumed. Id. at 301.

identical claim was raised on direct appeal and rejected by the state appellate court. This claim is not remediable in a §2254 proceeding. As pointed out herein, alleged errors in a state court's jury instructions form no basis for federal habeas corpus relief unless they are so prejudicial as to render the trial fundamentally unfair. <u>Jones v. Kemp</u>, 794 F.2d 1536, 1540 (11 Cir.), <u>cert</u>. <u>denied</u>, 479 U.S. 965, 107 S.Ct. 466, 93 L.Ed.2d 411 (1986); <u>Bryan v. Wainwright</u>, 588 F.2d 1108 (5 Cir. 1979); <u>Pleas v. Wainwright</u>, 441 F.2d 56 (5 Cir. 1971). As to a state court's failure to give an appropriate theory-of-defense jury instruction, such failure without more, is generally a matter of state law and not a violation of the due process clause. Some other circumstances, demonstrating a serious miscarriage of justice, must also be present. <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 72-73, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991)(holding that to warrant reversal the error in the jury instructions must be one involving "fundamental fairness" (which is a narrow category) and "'by itself so infect[] the entire trial that the resulting conviction violates due process.'")(quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)); <u>Frey v. Leapley</u>, 931 F.2d 1253 (8 Cir. 1991). To obtain habeas corpus relief, the error must amount to "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." <u>Hill v. United States</u>, 368 U.S. 424 (1962).

For the reasons stated above in the discussion of ground one, this claim is meritless. Examination of the instructions provided to the jury in this case in conjunction with review of the trial transcript indicates that no federal constitutional error occurred here. The instructions actually provided, fairly and correctly stated the issues and law. <u>United States v. Russell</u>, 717 F. 2d 518,

521 (11 Cir. 1983). Moreover, the provided instructions, when viewed in light of the evidence admitted at trial and argument of counsel, adequately apprised the jury of Cesar's theory of defense, alibi. There is no question whatever that the jury was well aware that they should find Cesar not guilty if they had a reasonable doubt that Cesar was not the perpetrator of the subject offenses in that he had been elsewhere during the time the crimes were committed. Thus, the trial court's failure to *sua sponte* provide the jury with a specific alibi instruction did not render the trial proceedings fundamentally unfair.

Accordingly, the state appellate court's rejection on direct appeal of claim one raised in this federal proceeding, was factually reasonable and in accordance with applicable federal principles. The state court's result should not be disturbed. 28 U.S.C.§2254(d); Williams v. Taylor, 529 U.S. 362, 405-06 (2000). See also Mitchell v. Esparza, 540 U.S. 12, 16 (2003)("[A] state court's decision is not 'contrary to ... clearly established Federal law' simply because the court did not cite [Supreme Court] opinions.... [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'")(*quoting* Early v. Packer, 537 U.S. 3, 7-8 (2002).

## VIII. Evidentiary Hearing

After the respondent had filed his response to the instant petition and Cesar had filed his reply, Cesar filed a subsequent pleading stating that he has now learned that the lead detective in the case, Broward Sheriff Officer Shane Campbell, was "arrested for official misconduct and gave false statements to hide actions of his fellow officer's [sic], including but not limited to officers involved in petitioner's case." (DE# 16 at 1). Based upon this

"newly discovered evidence," Cesar asks this Court to conduct an evidentiary hearing so that he can "perpetuate and formalize knowledge and to communicate information that has been newly discovered implicating possible Brady[18] concerns that involved officer/detective Shane Campbell, and others." (DE# 19 at 1).

The petitioner's request for an evidentiary hearing should be denied. It is first noted that Cesar has never raised a *Brady*-claim in any state court proceeding and did not raise any such claim in his petition filed in this Court.[19] Further, his pleadings requesting an evidentiary hearing do not state when the "new evidence" was discovered and they contain merely self-serving assertions with no evidentiary support whatever, such as affidavits or other reliable evidence. After careful review of the record, evidentiary proceedings are not required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S.Ct. 1933, 1939-40, 167 L.Ed.2d 836 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing on his newly alleged *Brady*-claim or any

---

[18]In <u>Brady v. Maryland</u>, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused ... violates due process where the evidence is material either to guilt or to punishment." A *Brady* violation has three components: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the State, either willfully or inadvertently; and [3] prejudice must have ensued." <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999). The prejudice or materiality requirement is satisfied if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>United States v. Bagley</u>, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)(internal quotation marks omitted). Materiality is determined by asking whether "the government's evidentiary suppressions, viewed cumulatively, undermine confidence in the guilty verdict." <u>Smith v. Sec'y, Dep't of Corr.</u>, 572 F.3d 1327, 1334 (11 Cir. 2009)(*citing* <u>Kyles v. Whitley</u>, 514 U.S. 419, 434, 436-37 n. 10 (1995).

[19]Cesar indicates that he has filed a belated state petition for writ of habeas corpus based upon ineffective assistance of appellate counsel where he attempted to develop evidence as to the subject *Brady*-claim. <u>See</u> DE# 19 at 1. Cesar purports to have attached a copy of the state petition to his pleading filed in this Court. <u>Id</u>. However, no such state habeas corpus petition was attached and any such petition is not part of the record in this case.

21

other claim, Chandler v. McDonough, 471 F.3d 1360 (11 Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. Schriro, 127 S.Ct. at 1940; Turner v. Crosby, 339 F.3d 1247, 1275 (11 Cir. 2003), *cert. denied*, 541 U.S. 1034, 124 S.Ct. 2104, 158 L.Ed.2d 718 (2004). Cesar has failed to demonstrate that any undisclosed information regarding Officer Shane Campbell was material in that Cesar has not shown that there exists a reasonable probability that the result of the proceedings would have been different in this case had the subject evidence been disclosed to the defense before trial.[20] As summarized above, the credible evidence admitted at trial, which includes testimony from three eyewitnesses, sufficiently supports Cesar's guilt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U.S. 307, 326 (1979).

## IX. Conclusion

It is therefore recommended that this petition for writ of habeas corpus be denied.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

SIGNED this 11th day of May, 2010.

_____

UNITED STATES MAGISTRATE JUDGE

---

[20]Detective Campbell had been one of the investigating officers, he had executed the probable cause affidavit, and had been involved in obtaining a search warrant to search Cesar's residence. See Probable Cause Affidavit. (DE# 12; Ex. 1). See also Trial Transcript at 356-62. He did not testify at trial, however. (DE# 12; Ex. 10, 11).

cc:  Ismael Cesar, <u>Pro</u> <u>Se</u>
     DC# 700763
     DeSoto Correctional Institution
     13617 SE Highway 70
     Arcadia, FL 34266-7800

     Jeanine M. Germanowicz, AAG
     Office of the Attorney General
     1515 North Flagler Drive, #900
     West Palm Beach, FL 33401-3428